UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES PERKINS,** | ) | **CASE NO. 5:08-CV-2034** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **SUMMIT COUNTY SHERIFF** | ) | |
| **DREW ALEXANDER, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This Memorandum Opinion and Order arises out of the motion of Defendants Sheriff Drew Alexander, Deputy Sheriff Mark Adams, and Deputy Sheriff Rawney Trunko's ("Defendants") for Summary Judgment. (Doc. No. 19.) For the reasons that follow, Defendants' motion is **GRANTED**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Charles Perkins ("Plaintiff" or "Perkins") brings this civil rights action under 42 U.S.C. § 1983 against Summit County Sheriff Drew Alexander, Deputy Sheriff Mark Adams, Deputy Sheriff Rawney Trunko, and three unknown Deputy Sheriffs, alleging defendants subjected Plaintiff to excessive force. (Doc. No. 1, Compl.) Perkins maintains that, on July 16 or 17, 2006, the food service porter slammed Perkins' fingers in the food slot of his cell door, necessitating medical attention. (Id., pp. 3-4.) After medical personnel were summoned to treat Perkins' injuries, he alleges Deputy Adams searched his cell and confiscated and then destroyed Perkins' personal belongings. (Id., p. 4.) After Deputy Adams allegedly refused to let Perkins speak to a supervisor regarding his personal property, Perkins pressed the medical emergency call button in his cell in an attempt to summon a supervisor or "higher up Deputy." (Id.) Perkins alleges that instead of a supervisor, Deputy Adams returned to the cell with other,

unnamed, deputies, handcuffed Perkins to a "bull ring" on the floor of his cell and proceeded to beat him before leaving him restrained for almost nine hours. (Id.)

The next day, July 17 or 18, Perkins claims Deputy Adams returned to his cell, this time accompanied by Deputy Trunko. Perkins alleges he was again shackled to the bull ring, whereupon Deputy Adams punched and kicked him repeatedly and Deputy Trunko punched and kicked him and slapped and hit him with a taser gun. Perkins alleges this assault temporarily stopped due to the arrival of a mental health advocate, but resumed and increased in its severity upon the advocate's departure. (Id., p. 5.) Deputies Adams and Trunko then transported Perkins to the Mental Health Unit. (Id., p. 5.) During the transit, Perkins alleges the beatings continued at the hands of Adams and the unnamed deputies. (Id., p. 5.) After recuperating in the Mental Health Unit, Perkins returned to the segregation unit. (Id., p. 5.)

Two days later, on August 20,[1] Deputies Adams and Trunko returned to Perkins' cell and informed Perkins that a nurse was coming to see him. (Id., p. 5.) Because Perkins had previously made threats against medical personnel, (Doc. No. 19-3 at p. 3), Deputy Adams decided to search Perkins' cell to ensure he had no contraband to carry out his threats. (Compl. p. 5; Adams Aff. ¶¶ 14-15; Trunko Aff. ¶ 9.) Perkins was placed against the wall and suddenly turned towards Deputy Trunko. (Compl. p. 5; Adams Aff. ¶ 18; Trunko Aff. ¶ 12.) Deputy Adams responded by discharging a chemical spray towards Perkins and ordering him to the ground. (Compl. p. 5; Adams Aff. ¶19; Trunko Aff. ¶ 12.) Perkins alleges he was slammed to the ground, had his head lifted and slammed against the concrete, was kneed, kicked and punched repeatedly. (Compl. pp. 5-6.) In their affidavits, the Deputies claim that Deputy Adams used an arm bar technique to take the non-compliant Perkins to the ground, where he was handcuffed and

---

[1] Plaintiff's complaint alleges that this event occurred "on or about [. . .] August 20-22." Jail records and the affidavits of each deputy indicate the event occurred on August 20.

no further force was used. (Adams Aff. ¶ 20; Trunko Aff. ¶ 13.)

Perkins also alleges Sheriff Drew Alexander acquiesces or promotes, "by Policy or Procedure the physical abuse of inmates, hiding records, denying medical attention and denying use of force documentation/incident reports to cover up this physical and mental abuse of Inmates." (Compl. p. 3.)

Perkins filed his Complaint on August 22, 2008. (Doc. No. 1.) Defendants filed their answer on January 16, 2009. (Doc. No. 8.) The Court held a telephonic case management conference, in which Perkins participated, on January 27, 2009, and entered a case management plan and trial order establishing deadlines the same day. (Doc. No. 10.) Perkins filed a reply and a separate motion for appointment of counsel on June 15, 2009. (Doc. Nos. 15, 14.) The Court denied Perkins' motion for appointment of counsel on July 15, 2009, and entered a new dispositive motion briefing schedule the same day. (Doc. No. 18.) Defendants filed a motion for summary judgment on July 27, 2009, the dispositive motion deadline. (Doc. No. 19.) Perkins did not file a motion for summary judgment. The deadline for filing responses to dispositive motions was August 28, 2009. Perkins did not file an opposition.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law […].

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall

3

>set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein [. . .]. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989),

4

*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

In this case, Plaintiff Perkins has failed to file a timely response to Defendants' motion. Under *Guarino v. Brookfield Township Trustees*, 980 F.2d  399, 407 (6th Cir. 1992), the Court is not required to conduct its own probing investigation of the record to discover an issue of material fact when a summary judgment motion is unopposed. Nevertheless, the Court must still "carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the riposte for a silent party." *Id.* As such, summary judgment is proper if Defendants meet their burden in moving for summary judgment. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000).

**III.     LAW AND ANALYSIS**

**A.     Statute of Limitations**

Defendants first argue that Perkins' complaint is time-barred and should therefore be dismissed. Congress has failed to legislate a statute of limitations for claims brought under 42 U.S.C. § 1983, instead mandating under § 1988 that federal courts borrow state-law limitations periods. *Owens v. Okure*, 488 U.S. 235, 236, 239 (1989). In Ohio, the statute of limitations for § 1983 actions is contained in Ohio Rev. Code Ann. § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). The question of when the statute of limitations begins to run is governed by

federal law. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001) (citing *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985)). The Sixth Circuit has held that, "when asserting a claim under § 1983 for the use of excessive force, the 'injury' occurs on the date of the constitutional injury, the date the allegedly excessive force is used." *Hodge v. City of Elyria*, 126 F. App'x 222, 224 (6th Cir. 2005) (citing *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997).

In this case, Perkins' complaint was filed by the clerk of court on August 22, 2008. However, focusing on the court's date stamp overlooks the "prison mailbox rule." Under that rule, "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court." *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam) (extending *Houston v. Lack*, 487 U.S. 266 (1988)). While it is not clear in this case when the complaint was submitted by Perkins to prison authorities for mailing, there is "an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *See, e.g., Goins v. Saunders,* 206 F. App'x 497, 498 n.1 (6th Cir. 2006) (per curiam) ("[W]e treat the petition as filed on the date [the prisoner] signed it."). In this case, Perkins signed the complaint, and the civil cover sheet, on August 16, 2008.

Perkins' complaint makes clear that he is seeking redress for incidents of excessive force that happened on or about July 16-18, 2006 and on August 20, 2006. As to the former, Perkins' claim is untimely and barred by the statute of limitations. As to the August 20, 2006 claim, however, Perkins' claim survives the statute of limitations. Defendants have not proffered any evidence that might defeat the *Goins* assumption that Perkins delivered his complaint to prison officials on August 16, 2006, the day the complaint was signed. Under the "prison mailbox rule," his complaint is deemed filed as of that date and is timely with respect to the August 20 alleged incident.

6

**B.**     **Perkins' August 20 Excessive Force Claim Against Deputies Adams and Trunko**

The Court must first determine the appropriate standard of review to apply to Perkins' excessive force claim. The Supreme Court has "reject[ed] [the] notion that all excessive force claims brought under § 1983 are governed by a single generic standard." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The proper constitutional source of Plaintiff's claim depends on his status at the time of the incident, "whether free citizen, convicted prisoner, or something in between." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). If the plaintiff was "a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard. *Id*. By contrast, if the plaintiff was a convicted prisoner, the Eighth Amendment sets the standard, and asks "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotations and citations omitted). Finally, the standard under which a pretrial detainee's, who is neither a free man nor a convicted prisoner, excessive force claim is evaluated "lies in the murky area between the Fourth and Eighth Amendments." *Phelps*, 286 F.3d at 300. In this situation:

> [t]he Fourteenth Amendment is the source of a pretrial detainee's excessive force claim because when a plaintiff is not in a situation where his rights are governed by the particular provisions of the Fourth or Eighth Amendments, the more generally applicable Due Process Clause of the Fourteenth Amendment provides the individual with protection against physical abuse by officials.

*Lanman v. Hinson*, 529 F.3d 673, 681 (6th Cir. 2008) (citing *Phelps*, 286 F.3d at 300).

In this case, it is clear that Perkins was not a free man on August 20 when the alleged use of excessive force occurred. And it is clear from the record that Perkins is currently incarcerated. However, it is not clear from the record whether Perkins was a convicted prisoner

7

or a pretrial detainee at the time of the alleged incident. Defendants appear to believe the former, and urge this court to apply the Eighth Amendment standard to Perkins' claim. The record, however, only shows that Perkins was arrested on June 2, 2006 for a violation of Ohio R.C. 2950.05, a notice of change of address violation, and for violating a condition of his parole under Ohio R.C. 2967.15. (Doc. No. 19-3 at 6.) Persons who have been arrested for violating terms of release for a prior conviction, but not yet convicted and sentenced based on that violation are treated as pretrial detainees for the purposes of excessive force analysis. *See Turner v. French*, 2008 U.S. Dist. LEXIS 22384, No. 07-14694 at *7 (E.D. Mich. Mar. 21, 2008). Thus, it is clear that Perkins cannot be treated as a convicted prisoner for the purposes of excessive force analysis based solely upon his arrest for the parole violation.

Perkins was indicted on June 15, 2006, for the notice violation only. (Doc. No. 19-3 at 6.) Defendants have failed to provide the date of Perkins' conviction for the notice violation. Therefore, as Defendants have failed to establish Perkins' status as a convicted prisoner, the Court will give Plaintiff the benefit of analysis under the Fourteenth Amendment standard and will treat him as a pretrial detainee as of the date of the alleged incident.

"The Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham*, 490 U.S. at 395 n.10. The substantive due process rights of the Fourteenth Amendment protect citizens from the arbitrary exercise of governmental power. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). "The test applied by the Supreme Court to determine when governmental conduct reaches this threshold is to ask whether the alleged conduct 'shocks the conscience.'" *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (citing *Lewis,* 523 U.S. at 846). In *Lewis*, the Supreme Court explained that whether governmental conduct shocks the conscience depends on the factual circumstances of

8

the case. *Lewis,* 523 U.S. at 851-53. More specifically, in situations where the implicated government actors are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action, their actions will be deemed conscience-shocking if they were taken with "deliberate indifference" towards the plaintiff's federally protected rights. *Darrah*, 255 F.3d at 306. In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation, public servants' reflexive actions "shock the conscience" only if they involved force employed "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (quoting *Lewis*, 523 U.S. at 852-53).

Against this backdrop, the Court turns to Perkins' claim that Deputies Adams and Trunko violated his civil rights on August 20, 2006. Perkins' complaint alleges that, on August 20, 2006, Deputies Adams and Trunko removed Perkins from his cell and placed him against the wall in order to "shake" his cell down prior to a nurse's visitation. Perkins alleges he moved his head towards the Deputies, at which point he was sprayed with a chemical agent, taken to the ground and beaten. In support of their motion for summary judgment, Defendants submitted several pieces of evidence, including sworn affidavits from Deputies Adams and Trunko, the results of the Summit County Sheriff's confidential investigation reports and a litany of Perkins' prior recent disciplinary violations.

In their affidavits, Deputies Adams and Trunko describe the incident leading up to the chemical spraying. After Perkins was removed from his cell and placed against the wall, Perkins moved towards Deputy Trunko and, Deputy Adams, perceiving a threat to Deputy Trunko's safety, discharged a chemical spray towards Perkins and used an arm-bar technique to

9

take Perkins to the ground. The Deputies both dispute Perkins' allegations that they kicked and punched him after Perkins was taken to the ground. (Adams Aff. ¶ 21; Trunko Aff. ¶ 14.) Furthermore, the results of the Sheriff's investigation revealed that Perkins had suffered no injuries which would indicate the Deputies struck him repeatedly. (Doc. No. 19-2 at p. 3.) Perkins was given treatment on scene for the chemical spray contamination and the responding nurse "found him to have no other injuries." (Doc. No. 19-3 at p. 1.)

Even when viewed in a light most favorable to Perkins, the facts indicate that, as a matter of law, the chemical agent and subsequent use of the arm-bar technique to place him on the ground were used in "a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Perkins admits he turned towards Deputy Trunko, and in light of Perkins' extensive and documented disciplinary record, it was reasonable under the circumstances that Deputy Adams perceived a threat to Deputy Trunko's safety. Under these circumstances, the use of the chemical agent and subsequent use of the arm-bar technique were a "good faith effort to maintain or restore discipline" rather than force employed "maliciously and sadistically for the very purpose of causing harm." *See Claybrook,* 199 F.3d at 359; *see also Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (citing cases establishing the use of mace to control an inmate is not malicious or sadistic).

Perkins' allegations that Deputies Trunko and Adams assaulted him after he was restrained cannot be said to be a good faith effort to maintain or restore discipline as a matter of law. However, Defendants have provided affidavit and other documentation sufficient to rebut the claims made in Perkins' complaint, thereby shifting the burden to Perkins to show that there remained a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To meet this burden, Perkins cannot rely merely on allegations or denials in his

10

complaint. Rather, he must, as provided in Rule 56, set out specific facts showing a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 259 (1986) (nonmovant "may not […] rest on mere allegations or denials of his pleadings"); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 256 (6th Cir. 1998) (nonmovant "must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial").

While Perkins' complaint is accompanied by a sworn declaration, the Court finds it does not, by itself, create a genuine issue of material fact. If properly supported, a verified complaint may serve as an affidavit under Rule 56. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). However, the conclusory assertions in Perkins' complaint are not sufficient to withstand Defendants' well-supported motion for summary judgment. Perkins' complaint alleges the "torture and physical abuse is documented by medical reports, incident reports, use of force reports, [and] pictures of the injuries from the assaults/torture sessions." (Compl. at p. 6.) However, the reports clearly contradict this unsupported assertion. Furthermore, the discovery deadline in this case has passed. Perkins has failed to conduct any discovery in this case. He has submitted no opposition to Defendants' motion for summary judgment. While Perkins' complaint states "there are approximately ten to twenty witnesses" who would confirm the "torture of the Plaintiff," he has proffered no such evidence. The allegations made in Perkins' complaint are not supported with any evidence other than Perkins' own declaration. Defendants, on the other hand, have provided sworn affidavits, medical reports, incident reports and the results of an internal investigation to rebut Perkins' claims. This Court finds no reasonable juror could find by a preponderance of the evidence that Perkins is entitled to a verdict. Therefore, this Court finds granting summary judgment in favor of Defendants Adams and Trunko is appropriate.

C. **Perkins' Claim Against Summit County Sheriff Drew Alexander**

Perkins' complaint concedes that Sheriff Alexander "was not directly involved in the continual beating of the Plaintiff" but alleges that Sheriff Alexander acquiesced or promoted the unconstitutional conduct by "Policy or Procedure." (Compl. at p. 3.) The doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel; rather, in order to find those persons liable, a plaintiff must prove supervisors condoned, encouraged, or knowingly acquiesced in the alleged misconduct. *See Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). Municipalities and other governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged deprivation. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

In this case, there is no evidence that the county or jail had a policy or custom which caused Perkins' alleged constitutional deprivation. To be certain, Perkins makes reference in his complaint to "the regularly followed Policy or Procedure" allegedly followed by the Deputies, but has conducted no discovery or otherwise provided proof of any such policy. Perkins' unsupported allegation as to Sheriff Alexander's "policy" falls well short of setting forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *See Miller*, 141 F.3d at 256. Therefore, this Court finds granting summary judgment in favor of Defendant Sheriff Drew Alexander is appropriate.

D. **Perkins' Claim Against Three Unknown Deputy Sheriffs**

Perkins' complaint also alleges claims of excessive force against three unknown deputy sheriffs. This claim stems from the beating allegedly administered to Perkins during his transit to the mental health unit on July 17 or 18, 2006. As discussed earlier, Perkins is time-

12

barred under the statute of limitations from recovering for any of the alleged incidents of excessive force occurring before August 16, 2006. Therefore, this Court finds granting summary judgment in favor of the three unnamed deputy sheriffs is appropriate.

**E.     Qualified Immunity**

Given that this Court concludes that Plaintiff has not established a constitutional violation sufficient to withstand the motion for summary judgment, the Court need not discuss Defendants' arguments concerning qualified immunity. *See S.E. v. Grant County Bd. of Educ.*, 544 F.3d 633, 641 (6th Cir. 2008).

**IV.    CONCLUSION**

For all of the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 19) is **GRANTED**. This case is **DISMISSED**.


**IT IS SO ORDERED**.


Dated:    October 22, 2009

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**